## Harvey vs. Dewoody et. al.

The usual remedy for a public nuisance is by indictment; for a private nuisance by action on the case; though a court of chancery will exercise jurisdiction as to both; but it seems that any person may abate a public or private nuisance.

The mayor, councilmen and constable of the town of Des Arc, being sued individually in an action of trespass for pulling down the plaintiff's house, justified under an ordinance of the corporation declaring the house a nuisance, in that it was unoccupied by the plaintiff or a tenant, but used by others in such manner as to endanger the town by fire, and also in such manner as to make it offensive to the citizens of the town and endanger their lives; and providing that if the plaintiff did not, within a specified time after notice, abate the nuisance, the constable should proceed to do so: the justification held sufficient on demurrer.

*Error to the Circuit Court of Prairie county.*

The Hon. John J. Clendenin, Circuit Judge.

Williams & Williams for the plaintiff. The points in this case are simple and few: the special causes of demurrer point out the objections to the plea, sufficiently—although the act of incorporation gives the town council power to prevent and remove nuisances. See *Acts of* 1854, *page* 68, *sec.* 7. Yet, the Council is bound by the constitution and laws of the land. See *Constitution of Arkansas, art.* 2, *sec.* 6, 9 *and* 10. The powers and privileges of corporations and corporation courts, are limited and special, and no presumptions are indulged in favor of their exercise; and the party setting up such proceedings, must show every prerequisite to the exercise of the power, and that it has been properly exercised upon a proper subject. 18 *Ohio Rep.* 523; 4 *Missouri* 242; *Sharp vs. Spier,* 4 *Hill* 76; *Sharp vs. Johnson,* 4 *Hill* 92; 19 *Johnson* 33; *Peacock vs. Bell,* 1 *Saunders* 73; 8 *Cowen* 311; 5 *Cranch* 173.

A nuisance is defined by Blackston, to be anything that worketh hurt, damage, or inconvenience. 3 *Black. Com.* 211.

The plea should have set up the facts that made the house a nuisance; and this they have attempted to do, but the facts set up do not show it to be such. These facts are necessary to be shown, because the powers of the council are limited, and there is no presumption in their favor, as the authorities show—and he who would justify under them, must show that they acted within the scope of their authority. A Town Council has no right to pull down a house because they may have a visionary idea that it may take fire; if so, no man's property is safe, particularly when it is condemned without notice. Neither was the fact that the house was used by the " good citizens of said town," as a privy, any reason why they, by their Town Council, should destroy another man's property. If anything was a nuisance, it was the dung in the house, and not the house itself; and the redoubtable Town Council should have set their constable to removing the dung, which was the real nuisance.

A point upon which we rely also, in this case, is the fact, that the plaintiff's property was condemned without notice. *State Bank vs. Marsh*, 5 *Eng.* 129; *Iglehart vs. Moore*, 16 *Ark.* 46; *Jones vs. Mason*, 7 *Eng.* 687. The notice in this case, which is set up in the plea, was not that the property would be declared a nuisance, but that it had been so declared: it did not require the owner to show cause against it; but merely to save the constable the trouble by doing himself what the constable afterwards did; that is to remove the house.

The law of the land has been grossly violated, private rights trampled upon, and the injured party had no remedy but the one he has adopted. The question is, will such lawless proceedings justify the parties engaged in it? And here we submit the case.

Jordan for the appellants: In support of the plea referred to 3 *Ch. Pl.* 1,094 *and notes; Baker vs. Boston*, 12 *Pick.* 192, *and authorities cited; Hart vs. Mayor, etc., of Albany*, 9 *Wend.* 571; *Van Warm vs. Mayor of Albany*, 15 *ib.* 262; 14 *Wend.* 250; 4 *N. Hamp.* 527; and the act incorporating the town of Des Arc.

Mr. Justice Hanly, delivered the opinion of the Court.

The plaintiff in error impleaded the defendants, six in number, in trespass, in the Prairie Circuit Court. The declaration contains three counts, in substance as follows: 1st. "That the defendants, on the 1st March, 1855, and on divers other days and times, between that period and the commencement of the suit, (July 18th, 1855,) did instigate and procure one of their number, to wit: the defendant Robinson, to enter with force and arms, against the peace and dignity of the State of Arkansas, a certain lot, No. 8, in block No. 24, in the town of Des Arc, county of Prairie, and after so entering, then and there to pull down and entirely destroy, a certain house or tenement thereon situate, the lawful property of the said plaintiff, and by him then and there rightfully possessed, of great value, to wit: of the value of two hundred dollars, etc., etc.

2d. " That the defendants, (except Robinson,) heretofore, to wit, on the 30th March, A. D. 1855, in the town of Des Arc, to wit, in the county of Prairie, composed the Town Council of the said town of Des Arc, and as such, did on that day pass an ordinance declaring a certain house and tenement situate on lot No. 8, block No. 24, of said town, according to the plan of one Israel M. Moore, and then owned by the plaintiff, a nuisance, and in and by said ordinance, so passed by them as such Council, commanded the said defendant Robinson, to remove the same in case the said plaintiff did not do so, which said ordinance was approved by the said Council, and the said defendant De Woody, who was then Mayor of said town"—averring in continuation, that plaintiff refused to remove the tenement on said lot, and that the defendant Robinson, on the first of March thereafter, proceeded to, and did pull down and destroy the same under and by the authority of said ordinance, and concluding in the usual form.

3d. This count is in the usual form of counts in trespass, averring the trespass set forth to have been committed by all defendants.

At the return term of the writ, all the defendants appeared, and filed their demurrer to all the counts in the declaration, as-

signing therein special causes pertaining to each count; but which we do not regard as necessary to be stated. The demurrer, as applicable to the whole declaration, was argued by counsel, and by the Court overruled. .

The demurrer to the declaration being overruled, the defendants again appeared and filed their two joint pleas, to wit: 1st, the general issue: and 2d, a special plea in bar, in substance as follows: "That at, before and after the committing of the said supposed trespass, the said De Woody was mayor of the said town of Des Arc, and that the other defendants (except Robinson) composed the Town Council of said town, and that the defendant Robinson was the town constable of the said town, duly elected and qualified according to law, and that they, the said mayor and council had in them, as such, vested by law, full power and authority to remove any nuisance from within the corporate limits of the said town of Des Arc, and the said defendants aver that the said house was situated within the corporate limits of said town, and was a nuisance in this, that said house was unoccupied by said plaintiff, or any one else, at and for a considerable time before the committing of the said supposed trespass, except by transient persons, through whose negligence said house was in great danger of taking fire, and thereby, from its proximity to other property (houses) situate in said town, causing great loss to said town, and the good citizens thereof; and further that said house was frequented and used as a privy— offensive to the inhabitants and calculated to endanger the health of the citizens of said town; and that the said town council composed of the defendants, as aforesaid, in their corporate capacity as aforesaid, to wit, on the 20th day of March, A. D. 1855, passed an ordinance whereby the said house was declared to be a nuisance, and ordering the said defendant Robinson, as constable as aforesaid, of the town aforesaid, to give to the said plaintiff, or his agent, notice of the passage of the said ordinance and its provisions, as touching the said house, and require him the said plaintiff, to remove or cause to be removed, the said house, within thirty days from and after the service of said notice, and if after the lapse of thirty days from the giving of said notice, the said house

should not be removed, then, that he, the said defendant Robinson, as town constable as aforesaid, was ordered and required to cause the said house to be removed—that the said Robinson, as constable, in accordance with the provisions of said ordinance, gave to the said plaintiff notice as aforesaid, and after the lapse of thirty days, the said house still remaining, and the said plaintiff having wholly failed to remove the same, he the said defendant Robinson, as constable as aforesaid, caused the said house to be removed, as might legally be done for the causes aforesaid, which is the said supposed tresspass whereof the said plaintiff hath thereof complained against them, and this they are ready to verify," etc.

To the first plea, the general issue, the plaintiff joined issue, and to the second one he demurred, assigning sundry causes, which we will not state. The demurrer to the second plea was argued by counsel, and by the Court overruled. The plaintiff declining to answer over to the plea, and electing to rest upon his demurrer thereto, judgment final was rendered by the Court, in favor of the defendants, for the costs of the suit. Plaintiff brought error, and assigns for ground the ruling of the Court below upon his demurrer to the defendants' second plea as above.

In determining the questions involved in the assignment, we will regard the plea demurred to, as, in form, good. Our purpose will be, in the present enquiry, to address ourselves to the substance of the plea, rather than its form or artistic structure, with the view of determining whether its substance or matter is sufficient to bar the plaintiff from a recovery on his declaration, supposing that, too, to be sufficiently formal in its several counts, but of which, it is not our purpose to stop to enquire.

The defence, set up in the plea, is a justification of the trespass complained of in the declaration. The facts upon which the justification is based are, in substance, that the town of Des Arc was, by an act of the Assembly of this State, approved 28th December, 1854, incorporated: that, by said act, the corporate powers of said town were vested in one *Mayor* and *four* Councilmen, to be chosen in a certain manner—that five of the de-

fendants were elected under the provisions of said charter, one as mayor, and the other four as councilmen—that at the same election, the remaining defendant Robinson was elected and chosen Constable of said town: all strictly in conformity with the provisions of the act of incorporation—that all qualified in their respective offices, and entered upon the discharge of the duties thereof—that, at a certain time named, it was ascertained that a certain tenement or house situate in said town, owned by the plaintiff, had become a common or public nuisance, by endangering the property and health of many of the good citizens of said town by its exposed condition, and liability to take fire, and because of the fact of its being used by the public as a privy, etc.—that it was thought by them in their official capacity, that the public health and security to property in said town required and demanded that said house or tenement should be declared a public nuisance, and be abated as such—that with this view they aver that on a certain day and time in said plea named and stated, they met in their corporate capacity, as by law they had a right to do, and passed an ordinance declaring said house or tenement of the plaintiff a public nuisance, and providing for its abatement by requiring the constable of said town, the defendant Robinson, to notify the plaintiff of the proceedings of the defendants as mayor and council of said town, touching said house or tenement, and inform him that should he not within thirty days next thereafter abate said nuisance by removing the causes thereof, that they in their official capacity, as mayor, council and constable, would abate the same by tearing down such house or tenement—that said defendant Robinson, as such constable, gave the required notice under said ordinance to said plaintiff—that more than thirty days elapsed after such notice was so given, and the causes of said nuisance being still unremoved or abated by said plaintiff, under the provisions of said ordinance the said defendant Robinson as constable proceeded to and did pull down and destroy said house or tenement, as the only means of abating said nuisance, and the plea avers that this is the same trespass of which the plaintiff complains in his declaration.

Under this state of facts, which are admitted on the record by the demurrer to the plea, it may not be unprofitable, by way of illustrating our views, to announce a few principles of law, which we regard as involved in this cause.

A *nuisance*, in its common acceptation, means, literally, annoyance. In law, its signification is more restricted. According to Blackstone, it means or signifies " any thing that worketh hurt, inconvenience or damage." See 3 *Blacks. Com.* 216.

*Nuisances* are of two kinds:—*common* or *public*, and *private*. See *Bac. Abr.* 146.

The *first* class is defined to be such an inconvenience or troublesome offence as annoys the whole community, in general, and not merely some particular person. See 1 *Hawk. P. C.* 197; 4 *Blacks. Com.* 166–7: It is said to be difficult to define what *degree* of *annoyance* is necessary to constitute a *nuisance*. In relation to trades, it seems that when a trade renders the enjoyment of life or property uncomfortable, it becomes a nuisance for the reason, that the neighborhood have a right to have pure and fresh air. See 1 *Burr.* 333. 2 *Car. & P.* 485. 2 *Lord Raym.* 1163. 1 *Str.* 686.

The *second* class, or *private nuisances*, is anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. See 3 *Blacks. Com.* 215. 5 *Bac. Abr.* 146.

For a common or public nuisance, the usual remedy at law is by indictment. For a private nuisance the ordinary remedy at law, is case. See 3 *Blacks. Com. C.* 13; 10 *Mass. R.* 72; 7 *Pick.* 76; 3 *Harr. &. McH.* 441.

Courts of chancery exercise jurisdiction both as to common or public, and private nuisances, by restraining persons from setting them up, by inhibiting their continuance, or compelling their abatement. See 2 *Story's Eq. sec.* 924, *p* 260.

As we have said, both Courts of law and Courts of equity afford ample redress, and sufficiently prompt remedies in case of nuisances. But it seems the law is not satisfied with these, as affording full protection to the public or citizen, in many cases, for it is generally conceded that any person may abate a public nuisance. See 2 *Salk.* 458. 5 *Bac. Abr.* 152. 3 *Ib.* 498.

And it seems that this right extends as well to *private* as to *common or public* nuisances. See 5 *Bac. Abr. ubi sup.* 2 *Bouv. Law. Dic.* § 3–2, *p.* 18. 2 *Barn. & Cress.* 311. 3 *Dowl. & R.* 556.

A public nuisance may be abated without notice (2 *Salk.* 458:) and so may a private nuisance, which arises by an act of commission. And where the security of lives or property may require so speedy a remedy as not to allow time to call on the person on whose property the mischief has arisen to remedy it, an individual would be justified in abating a nuisance from omission without notice. 2 *Barn. & Cress.* 311. 3 *Dowl. & R.* 556, as above.

As to private nuisances, it has been held, that if a man in his own soil erect a thing which is a nuisance to another, the party injured may enter the soil of the other and abate the nuisance, and justify the trespass. See 9 *Mass. R.* 316. 4 *Conn.* 418. 5 *Ib.* 210. 4 *N. H. R.* 527.

In the case we are considering, by reference to the act incorporating the town of Des Arc recited in the plea in this behalf, it will be discovered in the *seventh* section thereof, that, among other powers conferred upon the mayor and councilmen of said town, the power " *to prevent and remove nuisances*," is embraced and included. This provision or grant, with the residue of the *section* clothes the mayor and councilmen of the town of Des Arc with unquestionable legislative powers and prerogatives to a certain extent, and among them, they are fully empowered to adopt measures of police, for the purpose of preserving the health and promoting the comfort, convenience and general welfare of the inhabitants within the town. And among these powers thus conferred, there is no one more important than that for the preservation of the public *health* and *property*. It is not only the right, but the imperative duty of the town government to watch over the health of the citizens, and to remove every nuisance, so far as they may be able, which may endanger it. And they have necessarily the power of deciding in what manner this shall be done: and their decision is conclusive, unless

they transcend the powers conferred by the town charter, or violate the constitution.

It is clear, we think, from the plea, that the mayor and councilmen had the right to have the nuisance complained of, removed or abated in some one of the modes provided by law, even though in doing so it should be found necessary to destroy the house or tenement, as was the case in the instance at hand. The measure was regarded and esteemed by the corporate authorities as rather of a mixed character, partly sanitary, and partly economical—to preserve other adjacent property in the town; and as such, we hold that every citizen enjoys his property subject to such regulations. Police regulations to direct the use of private property so as to prevent its proving pernicious to the citizens at large, are not void, although they may, in some measure, interfere with private rights without providing for compensation. WILDE J., in *Baker vs. Boston*, 12 *Pick. R.* 194, a case similar to the one we are considering, said: "This principle was settled in *Vanderbilt vs. Adams*, 7 *Cow.* 349, and in *Stuyvesant vs. The Mayor etc. of N. Y.*, 7 *Cow.* 588." In the latter case, the same judge remarked: "the counsel for the failing party admitted that the principle was too clear to be questioned"—adding, "that the contrary doctrine would strike at the root of all police regulations." The order of the mayor and aldermen (in the case before him) stands on the same footing as quarantine and fire regulations, and if by such regulations an individual receives some damage, it is considered as *damnum absque injuria*. The law presumes he is compensated by sharing in the advantages arising from such beneficial regulations." Citing *Dove vs. Gray*, 2 *T. R.* 358. *Gov'r, etc., vs. Meredith*, 4 *T. R.* 794.

In *Hart vs. Mayor, etc., of Albany*, 9 *Wend.* 571, SUTHERLAND J. delivered an opinion in which the whole doctrine we are considering was reviewed, and in which it was held that "a corporation whose duty it is to prevent obstructions in a river will be considered a party aggrieved, and may by its own act, without indictment, abate or remove a nuisance." See also *Witman vs. Tracy*, 14 *Wend.* 254, *et seqr.*, to the same point.

From the foregoing authorities, we may safely state the law to be, that the party aggrieved by a nuisance, whether the public or an individual, may either resort to the appropriate remedy in one of the forums hereinbefore designated, or else may avail himself or itself of the right to abate the nuisance.

In the case before us, the house or tenement of the plaintiff was an unquestionable common or public nuisance, under the definition we have given, and as such it was perfectly competent for the mayor and councilmen of the town of Des Arc to ordain and require its removal or abatement, and having done so, all that they could be required to prove upon a trial at law for trespass, would be the existence of the nuisance, which is admitted by the demurrer we are considering.

We hold, therefore, without hesitation, that the matter set up in the plea demurred to by the plaintiff, was a sufficient bar to his action, and, consequently, that the demurrer thereto was properly overruled by the Court below. The judgment is, therefore, affirmed.

Absent, Mr. Justice Scott.