LONOKE *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered November 29, 1909.

1. NUISANCES—POWER OF MUNICIPAL CORPORATIONS.—A municipal corporation cannot declare that a nuisance which upon investigation is found not to be such. (Page 550.)

2. SAME—POWER OF MUNICIPAL CORPORATIONS.—In the absence of any ordinance, a municipality may proceed in equity to secure the abatement of a public nuisance. (Page 551.)

3. MUNICIPAL CORPORATIONS—POLICE POWER.—By virtue of its police power a municipality is authorized to adopt such measures for the protection of the lives and property of its citizens as are reasonable and legal. (Page 551.)

4. NUISANCES—DEFINITION OF PUBLIC NUISANCE.—A public nuisance is that which affects the people and is a violation of a public right, either by a direct encroachment upon public property, or, by doing some act which tends to a common injury, or by the omission to perform a duty. (Page 551.)

5. SAME—CONSTRUCTION OF RAILROAD IN STREET.—A railroad constructed across and along the public streets of a town under authority of law is not a nuisance *per se,* though it may become such by reason of its circumstances or location or surroundings. (Page 552.)

6. MUNICIPAL CORPORATIONS—ESTOPPEL.—Where a town has for forty years acquiesced in the use of its streets by a railroad company for track and depot purposes, it will be estopped to deny the rightful authority so to use and occupy the streets. (Page 552.)

7. NUISANCE—BURDEN OF PROOF.—In order to obtain an injunction against or the abatement of an alleged nuisance, the complaining party must show a clear and strong case supporting his right to such relief. (Page 552.)

8. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—
Where the finding of a chancellor upon the facts is not against the preponderance of the testimony, it will not be disturbed. (Page 553.)

Appeal from Lonoke Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*T. C. Trimble, Joe T. Robinson* and *T. C. Trimble, Jr.,* for appellant.

One cannot erect a nuisance upon his own land adjoining vacant lands owned by another, and thus control the use to which the vacant lands may be subjected in the future. 63 N. Y. 568; 20 Am. R. 568. Brick burning is not a nuisance *per se,* but may become so by reason of the manner of operation. Wood on Nuisances, 727. The depot and cotton platform are a nuisance, and should be abated. 70 Ark. 12; Joyce on Nuisance, pp. 299, 243. If an obstruction is unnecessarily created or safety in the streets is unnecessarily impaired, a nuisance is created. 36 N. Y. Supp. 863. And such obstruction is not excused by the fact that it is necessary for the convenience of the railroad company. 77 Ia. 442; 95 N. C. 602; 59 Me. 189. A business strictly lawful may be so conducted as to be a nuisance. 86 Ind. 117; 73 Ind. 184. A railroad cannot acquire by prescription a right to maintain a nuisance. 91 Tenn. 445; 78 Ga. 271; 73 N. Y. Sup. Ct. 241; 107 N. Y. 360; 103 N. Y. 77; 37 Barb. 301; 53 Barb. 629. The town had a right to regulate the use of the streets. Kirby's Dig., § 5456; 58 Pa. 254; McQuillin on Mun. Ord., § 358; 111 Cal. 25; 36 Ind. 552; 15 Mich. 54; 62 Tex. 715. Anything which renders the use of a street hazardous is a nuisance. 39 Ga. 725; 40 Ill. 428; 44 Hun 219; 95 N. Y. 83; 29 Hun 105. A wooden building within a district in which such buildings are prohibited may be removed by ordinance. 117 Pa. 326; 11 Met. 55; 2 Rawle 262; Kirby's Dig., § 5439. The unreasonableness of the ordinance must be clearly shown. 31 Minn. 402. And inconvenience to the railroad company is not sufficient for that purpose. 45 N. Y. 154.

*John T. Hicks* and *Thos. S. Buzbee,* for appellee.

The ordinance was void because not adopted at a lawful meeting. The action of the city council in destroying appellee's property was not authorized by law.

FRAUENTHAL, J.  The appellee, the Chicago, Rock Island & Pacific Railroad Company, owns and operates a line of railroad which passes through the town of Lonoke, Arkansas.  In about the center of the business portion of the town are located its depot grounds.  These depot grounds extend about 250 feet from the northern to the southern boundary thereof, including the streets, and upon the eastern boundary is what is known as Center Street and on the western boundary Richwood Street.  These two streets run north and south across the right of way and railroad tracks of appellee, and are about 300 feet apart.  Upon these depot grounds the appellee has built and maintained for at least forty years a passenger and freight depot, platforms and structures referred to in this litigation.  The right of way and railroad track of the appellee runs from east to west through about the middle of these depot grounds.  Its passenger depot is situated north of the track.  South of the railroad track and adjacent to it are located its freight depot and platform and other structures, which extend practically from Center to Richwood Street.  Upon the southern extremity of the depot grounds are located business houses which are 125 feet distant from the railroad track, and these are located nearer the track and freight depot than other buildings in the town.  In 1907 a number of citizens made complaint to certain officials of appellee that the freight depot and platform and structures south of the railroad track were dangerous to the health and convenience of the citizens, and that they tended to obscure the view of the crossing at Center Street, and that consequent upon their location the switching of trains at that crossing, in placing the cars at the depot for unloading, made dangerous and unsafe to the people the crossing at Center Street, over which a great per cent. of the people passed.  And they requested the removal of the freight depot, platform and structures located south of the track.  The railroad officials promised to remedy the conditions.  No action being taken by the appellee in that regard, the council of the town of Lonoke on August 19, 1908, passed an ordinance declaring said freight depot, platform and structures to be nuisances, and ordered the appellee to remove them, under a penalty for failure to do so; and in event it did not do so it ordered the town marshal to remove them.  There-

upon the marshal and officials of the town of Lonoke threatened under and by authority of said ordinance to move the said freight depot and structures, and the appellee then began to remove them itself to a point upon its right of way and about 200 or 300 yards west of its present location. This proposed place of removal was located in front of and near the residence property of J. H. Melton; and he and a great number of the citizens of Lonoke objected to and protested against the removal of said freight depot and structures from their present location.

On October 6, 1908, the said J. H. Melton instituted this suit in the chancery court against the appellee, alleging that it was erecting said freight depot and structures adjacent to his residence, which would injure him in the enjoyment and comfort of his home, and would constitute a nuisance; and he sought to enjoin the appellee from erecting and maintaining the said freight depot and structure at said proposed location. The appellee in its answer to said bill asked that the town of Lonoke and its marshal and other officers be made parties to the suit; and against them it brought a cross complaint in which it alleged that the marshal and officers of the town of Lonoke, acting without right or authority, were threatening and proceeding to destroy said freight depot, platform and property of appellee and to remove same from their present location on its depot grounds; and it sought to enjoin the said marshal and officers of the town from doing said alleged wrongful acts, and from destroying its property. The town of Lonoke and its officers made answer to this cross-complaint. They denied that they were proceeding to destroy the property of appellee without proper authority. They set forth the above ordinance, declaring said property to be a nuisance, and alleged that they were proceeding themselves to abate the same. They alleged that the said freight depot and structures were a public nuisance because they were injurious to the health of the people of the town, because they increased the hazard by fire to the property of the people of the town, and because in connection with the movements of its cars at the said crossing at Center Street appellee made that crossing dangerous to the lives and persons of the people who passed over the same; and in their

answer they prayed "that the cross-complaint be dismissed for the want of equity; that the said buildings and platforms aforesaid in the cross-complaint be declared to be a nuisance, and that the same be abated."

Upon the trial of the cause in the chancery court the witnesses appeared in person and gave oral testimony. A great number of witnesses testified on behalf of the parties to the suit, and the evidence presented before the chancellor is quite voluminous. The chancellor found that the said ordinance was not legally passed, and that it was invalid and void. He further found that the said freight depot, platform and other structures were not a nuisance, and that the acts of the appellee in the manner in which it maintains its property did not constitute a nuisance. It dismissed the complaint of J. H. Melton. It permanently enjoined the town of Lonoke and its officers from destroying or removing the said depot and platform, and from interfering with the railroad company in restoring same. From that decree the town of Lonoke and its officers have appealed to this court.

The town of Lonoke and its officers were proceeding to tear down and destroy the freight depot and other structures of the appellee located upon its depot grounds by the authority of an ordinance of that town declaring the same to be a nuisance and ordering the abatement thereof. It is contended that said alleged ordinance is invalid for the reason that it was not legally passed; that the ordinance was passed at a called meeting of the town council, and that one of the members of the council was not present at that meeting, and had no notice thereof. But we do not think that it is necessary to determine whether or not this ordinance was legally enacted, because the legality or illegality of the passage of said ordinance cannot affect the equitable rights of the parties in this litigation and the subject-matter thereof. If it should be determined that said ordinance was legally passed, that would not necessarily make an actual nuisance the structure and things complained, if in law and in fact they do not come within the legal notion of a nuisance. In the case of *Yates* v. *Milwaukee,* 77 U. S. 497, Mr. Justice Miller says: "But the mere declaration by the city council that a certain structure was an encroachment or

obstruction did not make it so, nor could such declaration make it a nuisance unless it in fact had that character." A municipal corporation cannot declare that a nuisance which upon judicial investigation is found not to be. *Arkadelphia* v. *Clark,* 52 Ark. 23; *Gaines* v. *Waters,* 64 Ark. 609; *Waters* v. *Townsend,* 65 Ark. 613; Ex parte *Foote,* 70 Ark. 12.

Upon the other hand, if it should be determined that said ordinance was not legally passed, still if the matters complained of do in law and in fact constitute a public nuisance, the municipality of Lonoke may proceed in equity in behalf of the people for their abatement. Joyce on Nuisances, § 439; 29 Cyc. 1235; *Harvey* v. *Dewoody,* 18 Ark. 252; *Philadelphia* v. *Thirteenth & Fifteenth Street Railway Co.,* 8 Phila. 648.

It is true that a municipality has the power, as one of the subordinate agencies of the State, to adopt and enforce all necessary measures for the protection of the lives and property of its citizens by virtue of the general supervision and control which it has over the police protection of its respective jurisdiction. But in the exercise of this police power it can only adopt those regulations and measures that are reasonable and which are legal. 2 Abbott on Municipal Corporations, § 854; *Chicago, R. I. & P. R. Co.* v. *Joliet,* 79 Ill. 25-43.

A municipal corporation, through its proper officers, is a proper party, and has the right in a court of chancery to seek the abatement of that which is a public nuisance. The sole question therefore that is involved in this case is whether, under the law and the facts of this case, the structures and the acts complained of by the appellants are a public nuisance. A common or public nuisance has been defined to be "that which affects the people and is a violation of a public right, either by a direct encroachment upon public property or by doing some act which tends to a common injury or by the omitting of that which it is the duty of a person to do. Public nuisances are founded upon wrongs that arise from the unreasonable, unwarrantable or unlawful use of property, or from improper, indecent or unlawful conduct, working an obstruction or injury to the public and producing material annoyance, inconvenience, and discomfort founded upon a wrong." *Bohan* v. *Port Jervis G. L. Co.,* 122 N. Y. 18, 32; Joyce on Nuisances, § 5; Ex parte *Foote,* 70 Ark. 12.

The act done or the structure erected may be a nuisance *per se,* or the act or use of the property may become a nuisance by reason of the circumstances or location or surroundings. In the one case the thing becomes a nuisance as a matter of law; in the other it must be proved by evidence to be such under the law.

A railroad is not a nuisance *per se;* and the mere construction of a railroad track across a public highway or street under authority of law is no nuisance. *Northern Central Ry. Co.* v. *Com.,* 90 Pa. 300; Joyce on Nuisances, § 248; 29 Cyc. 1180.

In this case the railroad company had owned its line of railroad and operated same through Lonoke for at least forty years. During all that time it owned its depot grounds and maintained thereon such structures as it deemed necessary to the conduct of its business; and during all that time its tracks and trains lay upon and passed over the streets of this town. The town of Lonoke during all this time has recognized these rights. The appellants never have made, and in this case do not make any contention that the appellee does not have these rights; and it will be presumed that it has these rights from this long continued exercise thereof under these circumstances. In the case of *Harvey* v. *Aurora & G. R. Co.,* 186 Ill. 283, it is said: "Where a city has acquiesced in the use for twenty years by a railroad company of its streets, and has seen its construction and improvements made thereon, it is estopped to deny the rightful authority to so use and occupy the streets."

The appellee has therefore the lawful authority to have its tracks upon and to run its trains across these streets, and the right to have and maintain the structures upon its depot grounds, and to manage and conduct its business as to it may seem best, if it does not in fact create and maintain a public nuisance. For "a railroad may become a nuisance by reason of the manner in which it is operated in the location, condition and use of its appurtenant structures." 29 Cyc. 1180.

It then becomes in this case a question of fact as to whether or not in the maintenance of said structures and the conduct of its business, which are herein complained of by appellant, the appellee has created and does maintain a public nuisance. Where the thing complained of is not a nuisance

*per se,* the burden is upon the complaining party to show that it is a nuisance in fact. In order to authorize an injunction in such case, the evidence must be determinate and satisfactory, and it must clearly show that the things complained of do constitute a nuisance. 29 Cyc. 1244, 1246. In 29 Cyc. 1225 it is said: "In order to obtain an injunction against or the abatement of an alleged nuisance, the complaining party must show a clear and strong case supporting his right to such relief," and this declaration of law is supported by numerous author-constitute a nuisance. 29 Cyc. 1244, 1246. In 29 Cyc. 1225 it is is held that a court of equity will not interfere to grant an injunction in a case of an alleged nuisance where the testimony as to the facts relied on to establish the allegation is conflicting.

In the case at bar a great number of witnesses have given their testimony. Upon the one hand, a great number of these witnesses have testified that the structures maintained by appellee on its · depot grounds are not injurious to health, and do not increase the hazard of fire to property; that the danger to life or person at the crossings of the street over the railroad, as now maintained, are not as great as they would be if the conditions should be moved to other localities in the town, and that the conditions are not now so unsafe or dangerous at the crossings as to constitute a public nuisance. On the other hand, a great number of witnesses testified to the contrary. These witnesses appeared in person before the chancellor and gave their testimony *ore tenus.* From that evidence he found that the acts done by the appellee and the structures maintained by it upon its depot grounds did not constitute a public nuisance. We have examined all this testimony, and we cannot say that the finding of the chancellor is against the preponderance of the testimony in this case. And it has been repeatedly held by this court that where the finding of the chancellor is not against the preponderance of the testimony, it will not be disturbed. *Sulek* v. *McWilliams,* 72 Ark. 67; *Hinkle* v. *Broadwater,* 73 Ark. 489; *Reed* v. *Reed,* 62 Ark. 691; *Craig* v. *Craig,* 90 Ark. 40.

The decree is accordingly affirmed.