GREEN v. SMITH.

5-1987                    328 S. W. 2d 357

Opinion delivered November 2, 1959.

*Murphy & Arnold,* for appellant.

*Charles F. Cole,* for appellee.

J. SEABORN HOLT, Associate Justice. This case involves the correctness of an injunctive order.

Appellees, six property owners in the town of Cave City, Arkansas, with a population of about 350 people, alleged in their petition, in effect, that the appellant owned property in Cave City near plaintiffs' property; that the appellant was engaged in raising broilers and was expanding his operation; that existing brooder houses could provide for 40,000 broilers; that the business was being operated in such a way that

the broilers produced odor, attracted flies and made loud and distracting noises at all hours of the day and night; that dust and litter were deposited on appellees' dwellings making it impossible to open their homes and that the odor was such that it was "almost impossible" for them to remain at their homes, thus reducing the market value of appellees' property. An injunction was sought by appellees. **Appellant answered** with a general denial. A trial resulted in a decree granting certain injunctive relief prayed. The decree contained these recitals: "It being conceded that defendant's broiler houses are not nuisances *per se*, the question for the court to determine in this case is whether petitioners have proved by fair preponderance of the evidence that the operation of defendant's broiler business constitutes a nuisance and, if so, whether it constitutes such a nuisance as should be abated entirely or whether he should be required to change his method of operation so that all the equities may be equalized.

"I find that even his recent operations have infringed upon the rights of petitioner, Simpson, to the peaceable use and enjoyment of his home and to the several petitioners who live along the Strawberry-Cave City road although due to the greater distance, they probably have suffered to a lesser degree than has Simpson. It seems clear from the testimony of almost all the petitioners that his operation has been less obnoxious the past year or so than for some time prior.

"It seems clear that much of the difficulty is traceable to defendant's handling of litter and his disposal of dead chicks and his custom of loading out batches of chicks during the late hours of the night (although that may be customary in his line of business) arouses and disturbs the occupants of the residences nearby.

"I find that a preponderance of the evidence fails to show that the petitioners are entitled to an order restraining defendant from operating his broiler business at all but I find that he should be restrained from leaving litter outside the buildings, anywhere on the premises, for a period of more than twenty-four hours;

that he should be restrained from leaving dead chicks anywhere about the premises but that they should be promptly buried (not burned); and that he should be restrained from catching out chicks after nine o'clock P.M. * * * As to the new broiler house which is being built considerably north of the present broiler houses, counsel for defendant very forcefully argues that, since it is conceded that it is not a nuisance *per se* and since it is not yet in operation, it cannot be enjoined but I find that it is simply an enlargement of his present operation, and hence, this restraining order will apply to it the same as to the other houses. Defendant will pay the cost.''

The court then entered the following order restraining appellant from: ''1. Leaving litter outside his building or anywhere on his premises for a period of more than twenty-four hours. 2. Leaving dead chicks anywhere about the premises and from burning them. They are to be promptly buried. 3. *Catching out chickens after nine P.M. and before seven A.M.*''

Following that decree this appeal followed. For reversal appellant relies on the following point only: ''The Chancery Court erred in granting a restraining order which totally prohibited the appellant from 'catching out chickens after 9:00 P.M. and before 7:00 A.M.' ''.

Our governing rule in cases such as here presented, where the act complained of is not a nuisance *per se* (as conceded here) is well stated in 92 Ark. 546, 123 S. W. 395, *Town of Lonoke* v. *Chicago, Rock Island & Pacific Railway Company,* in this language: ''Where the thing complained of is not a nuisance *per se,* the burden is upon the complaining party to show that it is a nuisance in fact. In order to authorize an injunction in such case, the evidence must be determinate and satisfactory, and it must clearly show that the things complained of do constitute a nuisance. 29 Cyc. 1244, 1246. In 29 Cyc. 1225 it is said: 'In order to obtain an injunction against or the abatement of an alleged nuisance, the complaining party must show a clear and strong case supporting his right to such relief' * * *''. In the pres-

ent case a great mass of conflicting testimony was introduced covering some 300 pages, and as indicated, appellant questions only the court's action in granting an injunction against "catching out chickens after 9:00 P.M. and before 7:00 A.M.".

The testimony on this issue, that is catching out chickens at night, seems to have been confined almost entirely to the question of the noises made by the chickens while being caught and taken from the houses in which they were confined. It appears that it requires about ten weeks to produce a broiler, and three times a year appellant catches and ships thousands of his broilers in the nighttime between the hours of 9:00 P.M. and 7:00 A.M. But appellant argues that there are reasons other than the noise issue to support his contention that he should be allowed to catch and load his chickens at night. He says in his brief: "The grown broilers are caught and loaded into trucks at night. The catching of the chickens at night can be done with less labor, and in shorter time, and without the chickens being bruised in the catching process. As industry requirements become more strict with Government grading now in effect the price of the broiler is adversely affected if the bird has an unusual amount of bruises. Thus, it is the universal practice now to catch broilers at night and deliver them during the night to the processing plant and each group of birds requires only a part of one night to be caught. The industry is highly competitive and a difference of as much as a cent a pound because of the chickens being bruised can mean the difference between a profitable enterprise and a losing venture."

We have been unable to find any substantial testimony in the record to support these contentions which it appears that appellant is assuming to be true. We have concluded, however, that the testimony bearing upon the above contentions should be fully developed and submitted to the trial court for further consideration.

Accordingly, the decree is reversed and the cause remanded for further proceedings not inconsistent with

this opinion, with costs of this appeal to be equally divided between the litigants.

Appellees have cross-appealed and contend that "the court should have also taken into consideration the fact that appellant's operations resulted in a depreciation of the values of appellees' properties, and granted appellees relief from that injury. The only way to obtain for appellees the relief to which they are clearly entitled is that appellant be enjoined from raising broilers in this area which is predominantly a residential area." We hold that appellees are not entitled to the equitable relief of injunction.