HARVEY *v.* ICE COMPANY.

(*Jackson.*  May 22, 1900.)

1. NUISANCE. *Livery stable.*

A livery stable, though erected and maintained adjacent to city residence property, is not *per se* a nuisance; but becomes a nuisance if kept and used in such manner as to impair the value of such adjacent properties, and destroy the comfort of those residing therein, by reason of the undue accumulation of filth, the emanation therefrom of foul and offensive odors, and the disturbance of boisterous conduct and unnecessary noises at unusual hours.

Case cited: Kirkman *v.* Handy, 11 Hum., 406.

2. ASSIGNMENT OF ERROR. *Insufficient.*

Where the Court correctly charges the jury as to the consideration of evidence erroneously excluded, the error is not in the charge, but in the exclusion of the evidence, and must be so assigned to be effectual.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County.  L. H. ESTES, J.

CARROLL & McKELLAR for Harvey.

WARINNER & WARINNER for Ice Company.

McAlister, J. The plaintiff brought this suit against the defendant company for damages for keeping and maintaining upon its premises a nuisance. There was a verdict and judgment below in favor of defendant. Plaintiff appealed and has assigned errors.

The facts, briefly stated, are that the Consumers' Ice Company is owner of a lot in the city of Memphis, situated on the northwest corner of Orleans and Jessamine streets, immediately east of the residence lot of plaintiff. On this lot the company erected a stable and wagon shed for the horses and wagons used by it in the delivery of ice to its customers in the city. The only stable on the lot at the date of the institution of the suit was on the north side of the lot and about fifty-four feet from the rear end of plaintiff's house, which was a one-story cottage. But an open wagon shed, about 58x100 feet, was built near the west line of its lot and immediately east of plaintiff's cottage. There was a sharp conflict in the testimony respecting the way the stable and lot was kept. Plaintiff's testimony was to the effect that the wagon shed was built so as to overhang his cottage, within three feet of his windows; that said wagon shed was in reality a stable; that in hot weather or in damp weather the odors from the stable were stifling; that his windows were right at the fence, and

during the hottest weather he could not raise the windows on account of the stench. It is also shown there is a flooring in the feed house. The horses run around through the lot at night and get into the feed house, and when chased out by the stable boys, make a terrific noise. Plaintiff further testified, over objection of defendant's counsel, that the stable boys, when feeding the horses, make a great noise "hallooing" at them; that the wagons commence going out in hot weather at 3 o'clock in the morning, the drivers swearing and using profane language and singing vulgar songs. Counsel for defendant objected to this last evidence as incompetent, which objection was sustained by the Court, and the evidence was excluded, to which action of the Court counsel for plaintiff excepted.

On the other hand, evidence was offered on behalf of defendant tending to show that the premises were properly constructed and kept in good condition; that they were inspected periodically by the sanitary officers of the city; that much care was taken to keep the premises clean; that they were kept as livery stables are usually kept in the city, and were no more offensive than such places are ordinarily.

The jury, upon the facts, found in favor of the defendant, and there is ample testimony in the record to sustain their finding.

The law on this subject was laid down by this Court in the case of *Kirkman* v. *Handy,* 11 Hum., 406. McKinney, Judge, said, viz.:

"We have referred to no case in which a stable of any sort, public or private, whereso-ever located, has been held *ipso facto* a nuisance. Stables in a town are not like certain other erec-tions, necessarily and *prima facie* nuisances; that they may be both harmless and useful; but if they be so built, so kept, or so used as to de-stroy the comfort of persons owning or occupying adjoining premises and impair their value as places of habitation, stables do thereby become nuisances." He adds, further: "It cannot be denied that a livery stable in a town, adjacent to build-ings occupied as private residences, is, under any circumstances, a matter of some inconvenience and annoyance, and must more or less affect the com-fort of the occupants, as • well as diminish the value of the property for the purposes of habi-tation. But this is equally true of various other erections that might be maintained, which are in-dispensable and which do and must of necessity exist in all towns."

The only question, then, in this case was whether the defendant company kept and maintained its stables in such a manner as to constitute a nuisance.

The Court instructed the jury, viz.:

Harvey v. Ice Co.

"The material points in this case are these: First, that plaintiff and defendant are occupants of adjoining premises, and, second, that defendant has built and constructed upon its property a stable and occupies it with vehicles and work stock, and has permitted it to get in such an unhealthy condition as to make it a nuisance."

Again, the Court said the only ground upon which a recovery can be given in the case is this, viz.: "That the defendant ice company permitted the filth from the stock to accumulate about their premises in quantities and maintained it in that condition until foul and offensive odors pervaded the premises of plaintiff, naturally affecting or curtailing the comfortable enjoyment of their home, or permitted such loud and boisterous talk in the handling of their stock in such a way as to disturb them in the enjoyment of their home. . . . On the other hand, if you find from the evidence that the defendant built a stable on its premises adjoining the lot of plaintiff and kept therein its vehicles and work stock, that the odors arising from defendant's premises were only such as are usual and ordinary in using and caring for such a quantity of stock and vehicles; that the filth arising therefrom was collected and carted away as fast as it accumulated in quantities that were sufficient to impregnate the air with foul odors, then there can be no recovery in this case;

and on the question of noises by the men who handled the stock, you are to determine whether it was necessary or unnecessary. Whatever is necessary for the proper. handling of stock and caring for a stable does not make the owner thereof liable in damages to anybody."

Now, the first criticism upon the charge we will notice is that the Court, after excluding all evidence as to noise, profane language, loud and abusive talk, charged the jury that if defendant permitted such loud and boisterous talk in the handling of their stock in such a way as to disturb them in the enjoyment of their home, that there could be a recovery. The Court declined to admit evidence of noise, vulgarity, and swearing in the handling of stock, and after having ruled it out, he then charges the jury that if they find upon the evidence that there was swearing, vulgarity, and loud noises, they could . find for the plaintiff. This instruction does present a singular anomaly, but there is no objection to the charge as a correct statement of the law. The criticism of learned counsel is that the Court should have delivered such a charge after having excluded all the evidence which would have given the plaintiff the benefit of it. The real trouble arose in the action of the Court in excluding all evidence in respect of noises, vulgarity, and profane language. Counsel for plaintiff, at the time, reserved a

proper exception to the action of the Court, but he has failed to assign that action as error. We cannot, in the absence of an assignment of error, review the action of the Court in excluding that evidence. The charge of the Court was favorable to plaintiff and was altogether a proper instruction if there had been any evidence to warrant it. However, in the state of the record it was a mere abstraction, and, under the authorities, furnishes no ground for a reversal of the case.

It is next objected that the Court admitted evidence of the way the shed was built, the quartering of the horses near plaintiff's windows and doors, but instructed the jury that the only ground upon which the plaintiff could recover was that the defendant allowed filth to accumulate on said premises, so as to make them unhealthy. In the first place, it may be answered there was no request for additional instructions; in the next place, the defendant had a right to build its shed on its own lot in the manner that best suited its business. It also had the right to shelter stock on its premises and to feed them there. The only limitation upon the authority of the owner over its own premises is that it shall not be used in such a manner as unnecessarily to injure others in the enjoyment of their property. The question whether these premises were kept and

maintained in a proper manner was submitted to the jury, and they have resolved the issue in favor of defendant. The other assignments have all been examined, and we find in them no reversible error.

Affirmed.