## DURFEY *v.* THALHEIMER.

### Opinion delivered March 9, 1908.

1. NUISANCE—LIVERY STABLE.—Though a livery stable, even in a city or town, is not necessarily or *prima facie* a nuisance, yet, when so built or used as to destroy the comfort of persons owning and occupying adjoining premises, it may be abated as a nuisance. (Page 552.)

2. SAME—WHEN ABATED.—Before a lawful and useful business, such as a livery stable, will be abated as a nuisance, there must be a wrongful invasion of some legal right, and the damage resulting therefrom must be of a serious and permanent character. (Page 554.)

3. SAME—WINDOW OF STABLE OPENING ON DWELLING.—Where a livery stable was built beside a private residence with windows opening

thereon, the owners of the livery stable will be required, without unnecessary delay, to close such windows, so as to make the wall solid.  (Page 555.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*Geo. W. Williams,* for appellants.

It is not contended that a livery stable is a nuisance *per se;* but "in action for injuries resulting from a livery stable as a nuisance, it is sufficient to establish the injury, either from offensive smells, noise, or the unwarrantable collection of flies; and it is no defense that the stable is well and properly built, etc.  If, in point of fact, injury results to others that is clearly traceable to the stables as the promoting cause, it is a nuisance."  Wood on Nuisance, § § 594-5.  It is not necessary that the noisome smells should be hurtful or unwholesome; it is sufficient if they are so offensive, or produce such annoyance, inconvenience or discomfort as to impair the comfortable enjoyment of property by persons of ordinary sensibilities.  *Id.* § 501.  A smell that is simply disagreeable to ordinary persons is such a physical annoyance as makes the use of property producing it a nuisance, whether it is hurtful in its effect or not.  Producing no tangible injury to property, such a nuisance affects its value by rendering its use disagreeable or uncomfortable, and the recovery is necessarily confined to such sum as, in view of the character of the nuisance and the discomfort produced, will compensate the party for the depreciation in value and the injury to its enjoyment.  *Id.* § 502.  It is immaterial whether the proprietor of the business or trade was guilty of negligence, nor is it any defense that the business could not be carried on without producing such results.  Joyce on Nuisances, § 157.  The business may be lawful, and not injurious to health, and still be a nuisance, and the question of care in its operation is immaterial.  *Id.* § § 161, 166, 167.  It is no defense that it is properly built and kept, nor that its location is desirable or convenient, nor that it is equipped with modern improvements for drainage and ventilation.  *Id.* § 201-2, 203.  See also 50 Ia. 571; 54 Am. Dec. 347; 49 Am. Dec. 241; 67 Am. Dec. 665; 20 N. J. Eq. 201; 86 Md. 562; 42 S. C. 402; 5 Am. Law Reg. 104; 54 S. W. 1094; 22 Tex. Civ. App. 419; 2 Can. S. C. 20;

5 N. Y. Supp. 882; 134 Ill. 281; 70 Ark. 12; 108 U. S. 317; 137 U. S. 562; 135 U. S. 432.

This was Mrs. Durfey's home, and she also has a dower interest therein. It is not contended that her testimony should be considered for her husband, or his for her, but that she had a right to sue for injury to her.

An action for damages caused by a nuisance may be properly joined with a demand for injunction, and it is improper to compel the plaintiff to elect to sue for one only—the two being one cause of action with two remedies. 22 S. C. 476; 53 Am. Rep. 730; 56 Barb. (N. Y.) 480.

The court can not anticipate future damages as to a continuing nuisance, but can only find for damages to the time of trial. Nor will the payment to claimant of said damages bar future action. 101 N. Y. 98; 53 Am. Rep. 123, note; 52 Ark. 240; 56 Ark. 616; 72 Ark. 129.

*Charles Jacobson,* for appellees.

A livery stable is not *per se* a nuisance, nor *prima facie* so. In an action to abate a use of property for such purpose, the burden is on the plaintiff to show that it is a nuisance. Joyce on Nuisances, § 200; 87 Md. 68. In order to create a nuisance from the use of property, the use must be such as to work a tangible injury to the person or property of another, or to render the enjoyment of property essentially uncomfortable. It is not enough that it diminishes the value of surrounding property. Wood on Nuisances (3 Ed.), 4; 80 N. Y. 579; 20 R. I. 165; 36 L. R. A. 716; 16 Am. & Eng. Enc. of Law (1 Ed.), 923. See also 24 Nev. 454; 7 Mo. App. 37; 8 Cent. Law Jour. 70-1; 19 N. J. Eq. 294; 50 Ia. 571. Odors which are unpleasant but not physically discomforting are not a nuisance. 24 Fla. 103; 8 R. I. 246; 61 Wis. 500; 20 N. J. Eq. 201.

In all cases such as this, before recovery can be had, legal injuries and resulting damages must be shown—a concurrence of wrong and damages. 73 Ind. 284, 294. If, while one is exercising his natural right to the use and enjoyment of his own property, without negligence or malice on his part, unavoidable loss occurs to his neighbor, this is *damnum absque injuria.* The rightful use of one's own property may cause

damage to another without legal wrong. 113 Pa. 136; 122 N.
Y. 125; 11 Cushing, 221-6; 26 Me. 384; 82 Pa. 787; 145 Pa.
342. The only question in the case, with reference to the
stable being a nuisance and the right to recover damages, is
whether the stable was maintained in such a manner as to con-
stitute a nuisance. 104 Tenn. 583. And the clear preponder-
ance of the evidence sustains the finding of the chancellor that
the property is not a nuisance, and would have justified a find-
ing that appellant's property was not depreciated in value. Mrs.
Durfey's testimony was incompetent, and properly stricken out.
Kirby's Digest, § 6005; 77 Ark. 431; 54 Ark. 159; 65 Ark. 508.
The wife must bring a separate suit for her personal interest,
and have an interest in the property. Kirby's Digest, § 6017;
99 N. W. 154; 68 Ark. 180. Where suit is brought by husband
and wife, her interest in the subject-matter of the suit must be
averred or shown in the declaration. 26 Cent. Digest, 2487;
24 Conn. 165; 45 N. H. 67; 54 Vt. 486; 25 Ark. 63; 63 Mo.
131; 55 Mo. 456. See also 14 Tex. Civ. App. 250. The chan-
cellor erred in holding that mere proximity alone, causing
depreciation, was sufficient on which to base a recovery, in the
absence of allegation and proof that the defendants use of the
property was unlawful or attended with negligence or malice.
Cases cited above.

BATTLE, J. Frank Durfey commenced suit against Ben-
jamin and Sidney Thalheimer in the Pulaski Chancery Court,
alleging in his complaint that he was the owner of a certain
house in a residential part of Little Rock, Arkansas, which had
been occupied by himself and his ancestors for many years;
that defendants had purchased certain adjoining lots and in-
tended to build on the same a brick livery stable, and to keep
therein mules, horses and other stock, and all kinds of vehicles,
and to operate it with a large number of servants, at all times,
in the day and night. If built and operated, the stench from
the animals and their droppings, danger from fire, swarms of
flies, and the noises during the day and night would render it
an intolerable nuisance, and greatly depreciate plaintiff's prop-
erty, and inflict upon him an irreparable injury, and he asked
that they be restrained from erecting the stable.

The defendants answered and denied the allegations in

the complaint, and that the lots mentioned in the complaint were in a residential part of Little Rock; and alleged that they had obtained a permit from the city to build the stable.

Thereafter plaintiff and his wife, whom he had married since the institution of this suit, filed a supplemental complaint, in which they alleged, in addition to what was already alleged in the complaint, that the defendants had erected on the lots purchased by them a two-story building, and were using it as a livery and sale stable, and kept many horses, mules and other stock and all kinds of vehicles, and have hired a large number of servants, mostly negroes, who are boisterous, blasphemous and offensive; that they keep on hand hay, grain and other highly inflammable material; that they stable their animals in the second story of the building, where windows open opposite to plaintiffs' bed rooms and within a few feet; that odors from the animals and their droppings pour into their bed rooms, and make them uninhabitable; that the negroes are so placed that they have sight into the interior of their private apartments, and could, with small efforts, pass into them at any hour of the day or night; that plaintiffs and their children are kept in fear and dread of the negroes; that defendants openly violate the Sabbath by operating the stable on that day, thereby disturbing the quiet and rest of plaintiffs, who are members of the Christian Church; that their property has greatly depreciated, and has been rendered unfit for residence, and has been practically confiscated, as they can not use or sell it, and the health of Mrs. Durfey has been impaired; and they asked that defendants be perpetually enjoined and restrained from using the building as a stable.

The defendants answered and denied the allegations in the supplemental complaint; and alleged that they obtained a permit from the city to build the stable, and that it had been properly built and kept.

Evidence was adduced by plaintiffs tending to prove that they owned and occupied as a residence the lots and house thereon claimed by them in their complaint, and defendants had erected a brick livery stable on lots adjoining as stated in the complaint, which rendered the house of plaintiffs undesirable as a boarding house or residence.

H. C. McCain testified to the following effect: "Has at many times during the night, at different hours, heard negroes in front of the stable talking and laughing. The odors coming from the stable are very offensive, particularly during the very hot days—not so bad as other stables, but, if a breeze is blowing, can smell it."

Mrs. Wilson: She lives in fifty feet of stable, on south side of plaintiffs. "The odor, noise of horses, and ringing of bells wake her up often at different times during the night."

Mrs. Banister: Resides at 313 Spring street, Little Rock, Arkansas. Knows defendants' stable at the corner of Third and Spring streets. Could not say that the noise of the stable disturbed her, but have "heard noise and bells and smelt odors from there." The noises did not awaken her, as she was a sound sleeper. Have heard horses and mules in the stable squealing and kicking. When it is dry could not smell odors, but can when it is damp, or the wind is blowing toward her.

D. B. Neal: Is a physician; visited Mrs. Durfey professionally; the livery stable affected her health; while visiting her, noticed the proximity of the stable and the noises from the horses and negroes, but did not notice any obnoxious odors.

Tillar: Thinks property of plaintiffs greatly damaged in value on account of stable.

Greenwood: Occupied a room at 313 Spring street. The odors from the stable occasionally were not very pleasant.

The plaintiffs sustained the allegations in their complaint by their testimony.

Dr. G. M. D. Cantrell: "Practising physician thirty-one years. Knows the situation of the stable relative to residence. It is close. Would say as a physician that the unavoidable effect upon a family living in the house, of the livery stable, with a number of horses and mules and attendants, upon the health, quietude and enjoyment of the family, from the noise, dust, odor and disturbance, would be about as near a total destruction of the property (the residence near the livery stable) as he knew or could think of. If his, he would do anything to get rid of it; would give it away, anything to get away from there."

Carter Johnson, Morehead Wright, E. J. Bodeman, B. Bodeman, R. Colburn Butler, and J. E. Turpin, real estate agents,

testified that defendants' stable had not affected the market value of plaintiffs' residence.

Dr. Anderson Watkins testified: Is city physician of the city of Little Rock, and has been since 1898; is acquainted with appellant's stable, and it has an admirable arrangement. The floors, sewerage and method of cleaning seems to be about as good as could be contrived. The stable is kept in a sanitary condition, and nothing could be done by the owners to make it more so.

A. S. Reaves testified: Boarded three years at Mrs. Wilson's, adjoining appellees' residence. Prior to that time boarded in appellees' residence. While at Mrs. Wilson's, witness never detected any disagreeable odors from appellant's stable. Don't know of any boarder leaving Mrs. Wilson's on account of the stable. Mrs. Wilson has now more boarders than she ever had.

Charles M. Simon: "Is acquainted with Thalheimer's stable, and the stable is located in the livery stable district. Witness has a stable two blocks from Thalheimer's, and has recently erected a building on Third and Louisiana streets, seventy-five feet from his stable, eight feet from Kraft's stable, and the width of a street from Reinman's and Ehrman's stables; said building to be used as flats; is in use now for the same and wholly occupied. That the proximity of said stable has not impaired the use of said building for flats nor its rental value. Thalheimer's stable is the cleanest stable in Little Rock, except Kraft's, and is equal to that in cleanliness; and Thalheimer could do nothing to make his stable more sanitary."

Asbury Winder testified: "That he occupies a portion of Thalheimer's stable—that is, fifty feet on Third street and ninety feet upstairs for a livery and boarding stable. He feeds at five and eleven A. M., and six P. M.; takes about half an hour to feed. There are only two people in the stable after 8 P. M.; they all leave sometime before eight. The stable is swept several times a day, and the manure is taken out every morning. The bell which they use is so weak that it can hardly be heard on the sidewalk, as was shown by a test which was made. Witness is in the stable each day from seven A. M. until ten or ten-thirty P. M., and there is absolutely no profanity or loud noises made either by himself or his employees. It is impossible to see out

of the back windows into appellees' residence because the windows are sealed. The floors down stairs are made of concrete; upstairs they are as follows: The first floor is a two-inch floor with two-ply of tar poured upon that, then an inch tongue and groove floor, then tar on top of that, then a two-inch floor on top of that, making the entire floor five inches in thickness. No smoking whatever is allowed. There are no odors, as the stable is cleaned every day. I never saw a stable that was so constructed and complete as this in any city. Witness has been in the livery business eighteen years. The bell is a four-inch gong, and is used in the front part of the stable. When the horses are fed upstairs, it can not be heard down stairs."

Tom Kinley testified: Is night watchman at Winder's stable, and works from eight P. M. to eight A. M.; this is in appellants' property. There are no noises in the stable at night and very little at feeding time. There is no profanity or singing. There are no odors, as the manure is taken out each day and the floors are cleaned three times a day.

Hugh Oliphint testified: "Has a stable at 1518 Scott Street. Is acquainted with appellants' stable and doesn't know of any which is kept cleaner or more sanitary than Thalheimer's. Witness' stable is in the residence district of Fifteenth and Scott streets; one residence being five feet away, another nine feet away, and another across the street; never had any complaints. Has visited Thalheimer's stable, and never detected any odors there."

Sidney Thalheimer sustained his answer by his testimony.

Dr. B. H. Merchant testified: "Veterinary surgeon for sixteen years. Visited Thalheimer's stable often, as also other stables in the city. Thinks Thalheimer's is the only stable in town that makes any attempt at sanitary consideration. It is the only well constructed one, and the only clean one. It is kept very clean, and is not injurious to health."

J. J. Hawkins testified: "Is chief of police and chief sanitary officer; Thalheimer's stable is in good sanitary condition, and there are no objectionable features."

Peter Conrad testified: "Is a sanitary officer, and has inspected Thalheimer's stable at least ten times. The stable is in

good sanitary condition; in fact, it is the best kept livery stable in Little Rock."

F. G. Smith testified: "Is a sanitary officer, and has inspected Thalheimer's stable several times this summer, and found it in better shape than any other stable in the city. Complaints have been made about other stables, but never one about this."

John Peters testified: "Sanitary officer; Thalheimer has the best kept livery stable in Little Rock, and witness always found it in a good sanitary condition. It is the best constructed stable witness ever saw, and witness never found any objectionable features."

J. W. Hopkins testified: "Is a veterinary surgeon, of sixteen years' experience. Thalheimer's stable is always kept in first class condition, and is far ahead of any other stable in cleanliness and from a sanitary standpoint. Witness has been there frequently, and was never bothered with any unpleasant odors— never noticed any odor which could be offensive to anybody. Witness would have detected the same if they had existed."

Permission was given to the defendants by the building inspector of Little Rock, Arkansas, to erect the livery stable.

After hearing the evidence adduced by all the parties the court refused to abate the stable of defendants as a nuisance, but perpetually enjoined and restrained the defendants from raising or opening any of their windows or shutters in the southern wall of the stable, and rendered a judgment in favor of plaintiffs against the defendants for $2,000 on account of damages sustained by plaintiffs in the depreciation of their property by reason of the erection of the stable. Plaintiffs and defendants appealed.

A livery stable, even in a city or town. is not necessarily or *prima facie* a nuisance. It may become so by the manner in which it is constructed or conducted. It is the duty of every one to so use his property as not to injure that of another; and it matters not how well constructed or conducted a livery stable may be, it is nevertheless a nuisance if it is so built or used as to destroy the comfort of persons owning and occupying adjoining premises, creating an annoyance which renders life uncomfortable; and it may be abated as a nuisance. Joyce on the Law of Nuisances, § § 200-202, and cases cited; 2 Wood on Nuisances (3 Ed.), § 594.

Zabriskie, Chancellor, in delivering the opinion of the court in *Ross* v. *Butler,* 19 N. J. Eq. 294, said: "The law takes care that a lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or overrefined person. But, on the other hand, it does not allow any one, whatever his circumstances or conditions may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *Sic utere tuo ut alienum non laedas,* expresses the well established doctrine of the law." After a review of the authorities upon the subject, he further said: "The law, then, must be regarded as settled that when the prosecution of a business, of itself lawful, in the neighborhood of a dwelling house, renders the enjoyment of it materially uncomfortable, by the smoke and cinders, or noise, or offensive odors produced by such business, athough not in any degree injurious to health, the carrying on such business there is a nuisance, and it will be restrained by injunction.

In *Jargan* v. *Waddell,* 9 Iredell's Law, 244, Chief Justice Ruffin, speaking for the court, said: "It is true that a stable in a town is not, like a slaughter house or a sty, necessarily and *prima facie* a nuisance. There must be places in towns for keeping the horses of the people living in them or resorting thither; and, if they do not annoy others, they are both harmless and useful erections. But, on the contrary, if they be so built, so kept, or so used as *to destroy the comfort of persons owning and occupying adjoining premises* and impair their value as places of habitation, stables do thereby become nuisances. They are not necessarily so, but they may become so." *Coker* v. *Birge,* 9 Georgia, 425; *Burditt* v. *Swensen,* 17 Texas, 489.

It is said in *Bohan* v. *Port Jervis Gas Light Company,* 122 N. Y. 18: "While every person has exclusive dominion over his own property, and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neighbor's rights. The maxim *'Sic utere tuo ut alienum non laedas'* limits his powers. He must make a reasonable use of his property, and a reasonable use can never be construed to include those uses which produce destruc-

tive vapors and noxious smells, and result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood. The reports are filled with cases where this doctrine has been applied, and it may be confidently asserted that no authority can be produced, holding that negligence is essential to establish a cause of action for injuries of such a character." *Harvey* v. *Ice Company,* 104 Tenn. 583; *Shiras* v. *Olinger,* 50 Iowa, 571; *Cleveland* v. *Citizens' Gas Co.,* 20 N. J. Eq. 201; *Susquehanna Fertilizer* v. *Spangler,* 86 Md. 562; *Frost* v. *Berkley Phosphate Co.,* 42 S. Car. 402.

In *Owen* v. *Phillips,* 73 Ind. 293, Judge Elliott, in speaking for the court, said: "The right of appellants was not merely to have their house protected from wrongful injury, but they had the further right to be protected in its comfortable enjoyment. Noises, odors, smoke and dust may possibly work the house itself no material injury, and yet render it impossible for the owner to live in it with comfort. The appellants were not bound to prove both an injury to the property itself and an interference with its enjoyment. * * * It is true, as a general rule, that such acts as result in a mere diminution in value of property, which can be fully and readily compensated in damages, will not supply grounds for an injunction, and parties will be left to the redress afforded by an action for damages. But, while this is true, it by no means follows that interference with the enjoyment of the property will not furnish grounds for relief by injunction, although the property itself may sustain no physical injury whatever. The right to enjoy property is as much a matter of legal concern as the property itself. * * * The owner of property is entitled to enjoy the ordinary comforts of life, and that right is not to be measured by the notions of the people of a particular locality. * * * No man has a right to take from another the enjoyment of what are regarded by the community as the reasonable and essential comforts of life, because the notions of the people of a given locality may not correctly estimate the standard of such comforts."

But "a lawful and useful business should not be destroyed by injunction unless the necessity for doing so be strong, clear and urgent. He who asks the intervention of the court in such a case must show that the acts complained of do cause him sub-

stantial and essential injury, and that there is a grave and serious wrong done by the person against whom the complaint is lodged." Judge Elliott, in *Owen* v. *Phillips, supra,* upon this subject said: "There must be the wrongful invasion of a legal right, and the damage resulting must be serious and substantial. The rule upon this subject is well illustrated and enforced in *Gilbert* v. *Showerman,* 23 Mich. 448. It was there said by Cooley, J., in delivering the opinion of the court, that: 'We can not shut our eyes to the obvious truth that, if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters and among the most offensive trades of every city will be found persons who, from motives of convenience, economy or necessity, have taken up there their abode; but, in the administration of equitable police, the greater and more general interests must be regarded rather than the inferior and special. The welfare of the community can not be otherwise subserved, and its necessities provided for. Minor inconveniences must be remedied by actions for the recovery of damages, rather than by the severe process of injunction.' Courts interfere by injunction against establishments such as mills and manufactures, with great caution, and only in cases where the facts are weighty and important, and the injury complained of is of a serious and permanent character." He cites many cases to sustain this proposition.

The burden of proving that defendant's livery stable deprived them of the comforts of home or rendered life in their home uncomfortable rested upon plaintiffs. It was incumbent upon them to do so by a preponderance of the evidence. They adduced some evidence to support their contention, but the preponderance of the evidence, as we view it, shows that the defendant's livery stable was not such a nuisance as subjected it to abatement and their business to destruction by injunction; and that the court erred in rendering the judgment for damages.

But we think that the southern wall of the stable of defendants, which is next to plaintiffs' residence, should have been made solid, and no openings should have been left therein for windows or doors, and, for the better protection of plaintiff,

such openings as were left therein should be closed and filled with material which will make the wall solid; and that defendants should be required to do so without unnecessary delay.

The decree of the chancery court is reversed, and the cause is remanded with directions to the court to render a decree in accordance with this opinion.

The stable, of course, can be abated by proper proceedings, if at any time hereafter it shall become a nuisance.

HART, J., being disqualified, did not participate.