JONES *v.* KELLEY TRUST COMPANY.

Opinion delivered June 24, 1929.

858

*Warner & Warner* and *Hardin & Barton,* for appellant.

*Pryor, Miles & Pryor,* for appellee.

MEHAFFY, J. This suit was brought in the chancery court of Sebastian County, Fort Smith District, by appellant, asking that the appellees be permanently enjoined from the operation of a quarry and rock crusher in the city of Fort Smith. The chancellor heard the testimony, made findings of fact, and entered a decree restraining the appellees from doing certain things, but permitted them to operate the quarry and rock crusher under certain conditions. This appeal is prosecuted to reverse said decree.

Many witnesses testified. The testimony is voluminous, and it is too lengthy to set out. We have, however, carefully considered the entire testimony, and have reached the conclusion that the finding of the chancellor on the facts is not against the preponderance of the evidence.

The chancery court found that the rock quarry and crusher are located within the city of Fort Smith, and states that the issues presented by the pleadings are whether or not the appellees are committing, or about to commit, a nuisance by the operation of a stone quarry

and crusher in such a manner as to become a nuisance to the plaintiff, or any of them, so as to work material injury to them, or any of them, they being respective residents, owning their respective homes, occupied by themselves and members of their families, within the vicinity of the said rock quarry and crusher, the nearest one of said residents being approximately 390 feet from the rock crusher.

The chancery court found that the quarry had been in operation for 30 years or more, but had not been operated in recent years; that the appellees, in anticipation of running it, had contracted with the State Highway Department for the delivery of a large amount of crushed stone, and that they had purchased considerable machinery and were ready to install the same, but had not begun actual operation at the time the suit was begun, but were prepared to do so, and would have been operating but for this suit. The chancellor also found that the necessary consequence of the blasting and dynamite was noise and the throwing of broken particles of stone, and, unless done with great care, such noise and throwing of stone will cause material injury to plaintiffs in the enjoyment of their homes.

The court found that the operation of the quarry and the rock crusher, unless done with the highest degree of caution and care, will be a nuisance, keeping the appellants in daily fear of injury to their persons or to the persons of their families, and would be a source of material vexation and anxiety to them, or probable injury to their homes, or some of them. And the court further found that, while there is a conflict in the testimony, there is likely to occur, in the operation of the quarry, injuries which entitle them to injunctive relief; but found that the quarry and rock crusher may be so operated as to not be a material injury to plaintiffs and their families and their right of property.

The court also found that the city commission had granted a permit to operate the quarry and rock crusher, and the court limits the decree in its injunctive effect so

as to reduce the noise incident to the operation and the danger of hurling rocks to the lowest possible terms, so as to safeguard appellants' rights, as far as this may be accomplished by a decree.

The court therefore decreed that the appellees, and each of them, their agents, employees and servants, be and they are jointly and severally restrained from disturbing the peace and quiet of the families of plaintiffs, or any of them, by the explosion, at or near said rock quarry, of dynamite, either for blowing out or loosening stone from the bluff, or by reducing stone that had been thrown from the bluff, except at the times mentioned in the decree, under the supervision of an expert employee. After having conditioned the dynamite shot. so that the noise produced will be reduced to the lowest possible terms, and so that the stone will not be hurled so as to in any way injure the plaintiffs, or any of them, or members of their families, or injure their property, or fall upon the same. The court then enjoined the appellees from blasting at any time except within the hours from 10:30 to 12 A. M. and 5:30 to 7 P. M., and enjoined them from firing any shots except under the supervision of an expert, manager or superintendent, being personally present. The decree also required the appellees to give notice of the hours when such shots would be fired, and enjoined appellees permanently from making any secondary shots, known as doby shots, and decreed also that injury to appellants, their families or property, from noise or from flying stone, shall be conclusive of an intentional or grossly negligent disregard of the terms of this decree. The court retained jurisdiction for the purpose of enforcing the decree, but the decree was otherwise final. Both parties appealed.

Appellants' first contention is that the permit granted by the city commission is no defense, and we agree with the appellants in this contention. *Ft. Smith* v. *Western Hide & Fur Co.*, 153 Ark. 99, 239 S. W. 724; *Wilder* v. *Little Rock*, 150 Ark. 439, 234 S. W. 479; *Sander* v. *Blytheville*, 164 Ark. 434, 262 S. W. 23, 20 R. C. L. 501.

It is next contended by appellants that they are not estopped, and in this contention of appellants we also agree. 46 C. J. 777; *Ft. Smith* v. *Western Hide & Fur Co.,* 153 Ark. 99, 239 S. W. 724; *Osceola* v. *Haney,* 147 Ark. 555, 227 S. W. 407; *Tatum* v. *Ark. Lumber Co.,* 103 Ark. 254, 146 S. W. 145; *Gus Blass* v. *Reinman,* 102 Ark. 290, 143 S. W. 1087; *Brede* v. *Minn. Crushed Stone Co.,* 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1095.

The evidence in this case shows that, while there had been a quarry and rock crusher operated at this place for many years, yet it had not been in operation in recent years; and, moreover, the operation of the plant by appellees appears from the evidence to be materially different from the operation of the quarry and rock crusher formerly. The parties would certainly not be estopped, under the circumstances in this case, when they not only notified appellees, but began the suit before any operation was begun.

Appellants next contend that the streets and alleys were duly dedicated. The court, however, in its decree finds from the facts, and declares as a matter of law, that the question of streets is not presented for consideration at this time in this decree. But, if it had been presented, we think the evidence in the case clearly shows that the occupation of the streets, or the land where streets might be laid out, does not entitle the plaintiffs to an injunction. However, as this question does not seem to have been passed upon by the court below, and while the court held that it was not presented to the court at this time, it becomes unnecessary to decide it here.

It is then contended that the record abundantly sustains the complaint, and a permanent injunction should have been ordered. That is, the appellant contends that a permanent injunction preventing the operation of the quarry and rock crusher entirely should have been granted. The court did grant a permanent injunction against operating the quarry and rock crusher in such a manner as to endanger the plaintiffs, or their families, and permanently enjoined the appellees from so operat-

ing the quarry and crusher that any stone would fall on the lands of the appellants, and restricted the operation between the hours of 10:30 and 12 A. M. and the hours of 5:30 and 7 P. M., and appellees are permanently enjoined from operating the quarry and rock crusher at any other time, and the court retained jurisdiction for the purpose of enforcing the decree.

Operating a quarry and rock crusher may or may not be unlawful, depending upon the circumstances in each particular case. What might be a nuisance done in one place would not necessarily be a nuisance done in a different place.

"The locality is to be considered in determining whether there is a nuisance, although it is not conclusive, but is to be considered in connection with all circumstances in the case. There are some nuisances in which the act complained of may be wrongful, but constitutes a nuisance only by reason of its location, and there may be an act or condition that is rightful, or even necessary, but may become a nuisance by reason of its location. What might be a nuisance in one locality might not be so in another. A business which might be perfectly proper in a business or manufacturing neighborhood may be a nuisance when carried on in a residential district; and, conversely, a business which might well be considered a nuisance in a residential portion of a city or village may be proof against complaint when conducted in a business or manufacturing locality." 46 C. J. 666.

The law is well settled by the decisions of this court that the operation of a business may be a nuisance in one locality and not in another. See *Ft. Smith* v. *Western Hide & Fur Co.*, 153 Ark. 99, 239 S. W. 724.

The operation of a quarry and rock crusher is a lawful business, but this court has said that, if one does an act in itself lawful, which yet, being done in that place, necessarily tends to the danger of another's property, it is a nuisance, for it is incumbent on him to find some other place to do that act where it will be less offensive. *Yaffe* v. *City of Ft. Smith*, 178 Ark. 406, 10 S. W. (2d) 886;

*Bickley* v. *Morgan Utilities Co., Inc.,* 173 Ark. 1038, 294 S. W. 38. The court in the instant case, however, found that, unless operated with restrictions mentioned in the decree, the operation of the quarry and rock crusher would be a nuisance, and therefore permanently enjoined the doing of certain things, and permitted the operation only upon condition that it should be so operated as not to damage the appellants.

Every person is entitled to the undisturbed possession and enjoyment of his own property. The mode of enjoyment is necessarily limited by the rights of others; otherwise it might be made destructive to their rights altogether. Where it was contended that the defendant had a right to operate its plant, although large quantities of gravel, slate and stone were thrown on plaintiff's land, the court said: "The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct injury, without regard to its extent or motives of the aggressor. A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the enjoining proprietor, even for the purpose of lawful trade. * * * He may excavate a canal, but he cannot cast the dirt or stones upon the land of his neighbor, either by human agency or the force of gunpowder. If he cannot construct the work without the adoption of such means, he must abandon that mode of using his property, or be held responsible for all damages arising therefrom. He will not be permitted to accomplish a legal object in an unlawful manner. And it would seem that one who makes a blast on his own land and thereby causes rock to fall upon the lands of another, or upon the highway, is liable as a trespasser for injuries inflicted, although the blast is fired for a lawful purpose and without neglect or want of skill." *Central Iron & Coal Co.* v. *Vanderheurk,* 147 Ala. 546, 41 So. 145, 6 L. R. A. (N. S.) 370.

We think the chancellor was therefore correct in permitting the appellees to operate only on condition that they did not throw stones on the lands of appellants and did not do anything that injured or damaged the appellants or their families.

"Counsel for defendants cite a case holding, in effect, that, if the injury complained of is caused by the operation of a lawful business, carried on in the district given over to kindred classes of business, and the injury is only such as naturally flows from the operation of a business of that character, an injunction will not be granted if it would entail a serious injury to the defendant or to the public as compared to the injury complained of by the plaintiff. This is commonly referred to as the comparative injury doctrine. The cases in which this doctrine has been given effect are collected in a note to *Bristol* v. *Palmer,* 31 L. R. A. (N. S.) 881, 893, and in 20 R. C. L. 480." *Brede* v. *Minn. Crushed Stone Co.,* 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092.

The cases holding that the rights of habitation are superior to the rights of trade, and, whenever they conflict, the rights of trade must yield to the primary or natural right, are also collected in note to the case of *Bristol* v. *Palmer.*

The chancellor found in this case, on conflicting testimony, that appellees should be permitted to operate the quarry under the conditions named in the decree, and that they should be permanently enjoined from operating it in any other way.

A majority of the court are of opinion that the finding of the chancellor is correct, and that it should be affirmed. The writer does not agree with the majority, but is of opinion that a permanent injunction should have been granted. However, if operated only between the hours mentioned by the chancellor, and so that no damage can be done to the appellants, in compliance with the decree of the chancellor, appellees should be permitted to operate. The chancellor can at any time permanently enjoin the operation, if the decree is not complied with,

or if the operation results in damage to the appellants.

The decree provided for a special bailiff, at $150 a month, to be paid by the appellees, and from this part of the decree of the chancellor there is a cross-appeal. Counsel say they have found no authority which grants the chancellor the right to appoint a bailiff at the sole expense of one of the parties. It has been repeatedly held that a chancery court has the right to ascertain what damages will result in the doing of a certain thing and require the party wishing to do the act to pay the damages, and, upon its refusal to do so, to enjoin the commission of the act. In this case the chancellor found that this was necessary in order to protect the appellants, and the appellees are permitted to operate under the conditions named in the decree or not, just as they wish. If they do not want to be permanently enjoined, they must comply with the decree of the chancery court. The chancery court had authority to issue a permanent injunction, but he also had authority to permit the operation under the conditions named. This leaves the appellees with the option to comply with the terms of the decree or be permanently enjoined from operating.

The decree of the chancellor is correct, and is therefore affirmed.