EAST ARKANSAS CONSTRUCTION Co. *v*. JAMES.

4-8065                                              199 S. W. 2d 589

Opinion delivered February 17, 1947.

*Adams & Willemin,* for appellant.

*Ivie C. Spencer,* for appellees.

GRIFFIN SMITH, Chief Justice. East Arkansas Construction Company was enjoined from operating a rock crusher between seven o'clock p. m. and seven a. m. The restraining order was issued August 23, 1946, effective August 26th. Upon showing that the Company, prior to information that legal steps would be taken against it, had contracted with State Highway Department, and that definite commitments for deliveries not later than October 1 were outstanding, this Court permitted continuation of 24-hour milling until October 1st. This was done after a temporary supersedeas had been executed August 31st by an individual Judge. When on September 23d the matter came before the entire Court, issues were briefly stated and the Company agreed (respondent acquiescing) that night work would be discontinued October 1st. Appeal is on the merits. Contention of the Company is that a preponderance of evidence shows (a) that the crusher is situated in an industrial area outside the corporate limits of Jonesboro, but adjoining it; (b) that T. D. James is estopped from maintaining the suit and Harry O'Neil in effect consented to activities; and, (c) other plaintiffs (appellees here) have not met the burden assumed in asserting that night operation of the crusher is attended by objectionable incidents justifying a court of equity in restricting use to the period allowed by the injunction.[1]

There is testimony that the area surrounding the crusher has always been industrial property and it is not denied that the district is beyond Jonesboro's city limits. On the other hand, witnesses owning homes, or residing near the crusher, contend that the distinction between "industrial," and "residential," is not defined by use to such an extent that industrial activities of an unusually objectionable nature should be permitted to destroy nor-

[1] Plaintiffs other than James were: E. P. Johnson, George Cockran, C. W. Gray, Ezra Down, Charles Hague, W. M. Coleman, and A. Bagget. Harry O'Neil was not a plaintiff.

mal home comforts and the ordinary utilitarian purposes for which such property is designed.

E. A. Stuck, a witness for the defendants,[2] testified that the crusher and appurtenances were located on property once owned by Barton Lumber & Brick Company and lies west of the Jonesboro Brick Company. The crusher is on land formerly occupied by a brick plant. When asked regarding general nature of the entire area with reference to residence property, Mr. Stuck said: "I would say the territory has always been industrial property. The natural boundary [in part] is Old Highway No. 1, known as the 'Aggie' Road. The Barton Lumber & Brick Company [on the north] is the old Greensboro Road. It extends about 2,000 feet beyond what is known as New Highway No. 1. In the past this whole area has been [industrial or non-residential] property. Recently a new shoe factory, Johnson's Welding Shop, and a grocery store have been put up north of New Highway No. 1 and a little west of this location. The shoe factory is east of 'the line of the crusher,' and northwest of the.brick company. The welding shop is west of the shoe factory. South of the crusher the Snyder Drug Company has erected a concrete block warehouse 60 x 150 in size. East of the warehouse, along the old highway, the property is vacant except 'for a space and a frontage' used by Frape Truck Line. For a while the truck company maintained its shops there, with storage for vehicles. The old J., L. C. & E. Ry. has a spur track, and there are other such extensions."

Testimony as a whole sustains the Chancellor's finding (though not expressed affirmatively in the decree) that while the area had gradually acquired characteristics of an industrial nature, yet along with this development homes were erected without reason for apprehension that extraordinary and continuous inconveniences would be experienced, but to the contrary that the ordinary noise, smoke, dust, and movements incidental to the

---

[2] East Arkansas Construction Company is owned by J. M. Cartwright and Mary E. Kennedy. Apparently it is not incorporated.

character of industry then being operated would be the approximate measure of molestation. If O'Neil, who leased a right of way to appellant, or James, who bought of O'Neil and accepted $100 from appellant for right-of-way facilities, were the only injured parties, we would unhesitatingly say they are without equitable rights.

The rock crusher was not built until June, 1945. Extent to which it was operated during the first few months following installation is not shown. But it is definitely disclosed that all-night work did not begin until two or three weeks before the instant suit was filed. If it be conceded that the area was more suitable to industrial use than residential occupancy, the fact remains that erection of some of the homes was prior to crusher work on a continuous schedule—even before the crusher was put on the property—and certainly before its management inaugurated a 24-hour, seven-day week program. Witnesses testified that from eight to twelve heavy gravel trucks were used most of the time, being frequently compelled to reduce speed on account of road conditions and to shift gears; that this sometimes caused "back-firing" and other emergency noises; that headlights from trucks flashed through windows, and that the entire district was brilliantly illuminated to facilitate work. Because of the noise, employes who had to communicate with each other spoke loudly; while occasionally crude jokes were told. Effect was that some of the residents were unable to gain sleep until exhaustion aided them, often after two o'clock a. m.

In *Fort Smith* v. *Western Hide & Fur Co.*, 153 Ark. 99, 239 S. W. 724, Chief Justice McCULLOCH, in writing the Court's opinion, used this illustration: "The case affords, perhaps, an example where a business established at a place remote from population is gradually surrounded and becomes part of a populous center, so that a business that formerly was not an interference with the rights of others has become so by the encroachment of the population. Under these circumstances pri-

vate rights must yield to the public good, and a court of equity will afford relief, even where a thing originally harmless under certain circumstances has become a nuisance under changed conditions." [In the Fort Smith case the Hide & Fur Company was within the corporate limits.]

*Jones* v. *Kelley Trust Co.,* 179 Ark. 857, 18 S. W. 2d 356, is in point. It was there said that, although a rock crusher had been used in the vicinity for many years, ". . . the operation of the plant by appellees appears from the evidence to be materially different from the operation of the quarry and rock crusher formerly." It was then said that the plaintiffs below were not estopped. In the Jones-Kelley case restrictive directions were contained in the decree appealed from, and this Court held that the Chancellor acted with appropriate circumspection. A paragraph from the opinion is: "The cases holding that the rights of habitation are superior to the rights of trade, and, whenever they conflict, the right of trade must yield to the primary or natural right [are collected in a note to *Bristol* v. *Palmer,* 83 Vt. 54, 74 Atl. 332, 31 L. R. A. (N. S.) 881, and in 20 R. C. L. 480."] See American Jurisprudence, v. 39, pp. 333-4; Corpus Juris, v. 46, p. 670.

Mr. Justice MEHAFFY, who wrote the opinion in *Jones* v. *Kelley Co.,* expressed the broad proposition that "Every person is entitled to the undisturbed possession and enjoyment of his own property." However, scope of the statement is diminished by the subjoined sentence where it was said: "The mode of enjoyment is necessarily limited by the rights of others."

Granting that, in a general sense, appellants are entitled to "the undisturbed possession and enjoyment of their own property"—(in this instance a rock crusher) use to which machinery and necessary appurtenances are put may depend upon locality, proximity to others, deportment of employes, and sometimes (as in the case at bar) whether operations are continuous, or are restricted to ordinary working hours.

In view of the evidence, we are not able to say that the Chancellor erred in directing that operations be discontinued from seven o'clock in the evening until seven o'clock a. m.

Affirmed.