BRYSON v. ELLSWORTH.

4-8108                                          200 S. W. 2d 504

Opinion delivered March 17, 1947.

*W. S. Atkins,* for appellant.

*McRae & Tompkins,* for appellee.

MINOR W. MILLWEE, Justice. Appellees, 19 residents of the City of Prescott, Arkansas, instituted this suit in chancery court to abate a nuisance which they alleged appellants were maintaining in the use of a 13-acre tract of land situated directly across the street from, and in front of, the homes of appellees. Appellants acquired the 13-acre tract in 1941 and constructed a large barn on the lot which they inclosed with a wire fence. The barn was used by appellants for storage of feed crops gathered from their several farms. Appellants live several miles from the tract which was left in charge of a tenant, and was used as a feeding lot and pasture for cattle kept within the inclosure.

The complaint of appellees alleged the manner of operation and use of the barn and lot by appellants in detail, and charged that same constituted an intolerable nuisance. The prayer of the complaint was that appellants be permanently restrained from keeping cattle upon said lands. In their answer appellants admitted that they kept cattle in the inclosure, but denied the other allegations of the complaint.

The cause was heard on April 15, 1946, and taken under advisement until April 18, 1946, when the chancellor rendered a written opinion which was incorporated in the decree, and contains the following findings:

"The plaintiffs are people who reside across the street from this pasture and the testimony discloses that there is an average of about sixty head of cattle kept on the premises and among the cattle are two bulls. It is shown that for a long period of time water was permitted to run constantly from a hydrant across the street from some of the plaintiffs and as a result, it became a loblolly and was infested by mosquitoes and a large number of flies. It was the general congregating place

of the cattle and the droppings, together with the mud, created an odor that was very offensive to all of the plaintiffs. The testimony also discloses that breeding was carried on in the pasture and that a number of calves were born in the open in front of the residences of the plaintiffs; also that joint efforts had been made by the people asking to abate the nuisance, but all to no avail, and as a result, this action was brought.

"The court further finds that the plaintiffs have fully sustained the allegations of their complaint and that the use of the premises for such purposes not only makes the conditions surrounding the place almost unbearable, but endangers the lives and health of the plaintiffs and that the defendant should be enjoined from further use of said property for the purposes aforesaid.

"It is therefore by the court considered, ordered and adjudged that the defendants, and each of them, be and they are hereby perpetually enjoined and restrained from:

"(a) Keeping or maintaining more than 10 cattle at any one time upon said lands, the evidence disclosing that this is all the stock the pasture will support.

"(b) Keeping or maintaining a bull or bulls in said pasture at any time when cows are therein.

"(c) Permitting cattle to breed upon said lands or calves to be born thereon.

"(d) Permitting water to overflow upon said lands and cattle to congregate therein and to create a loblolly or muddy area.

"(e) Permitting the waste and droppings from such cattle as are maintained on said lands to accumulate in such manner as to become a breeding place for flies or mosquitoes or to create an offensive odor . . ."

Appellants concede that appellees were entitled to a decree in their favor embodying paragraphs (b) to (e), inclusive, of the above decree and only appeal from that part of the decree embraced in paragraph (a), which

limits to 10 the number of cattle they are permitted to keep and maintain within the inclosure.

It is the contention of appellants that, since the keeping of cattle in an inclosure is not a nuisance *per se,* the court was without power to enjoin appellants from keeping more than 10 cattle in their lot and only had the power generally to restrain appellants from maintaining cattle on the lands in such a way as to constitute a nuisance. It is true that the keeping of cattle is not a nuisance *per se,* but it may, nevertheless, become a nuisance in fact, depending upon the proof.

The distinction between the two types of nuisances is stated in 39 Am. Jur., Nuisances, § 11, p. 291, as follows: "The difference between a nuisance *per se* and a nuisance in fact lies in the proof, not in the remedy. In the case of a nuisance *per se,* the thing becomes a nuisance as a matter of law. Its existence need only be proved in any locality, and the right to relief is established by averment and proof of the mere act. But whether a thing not a nuisance *per se* is a nuisance *per accidens* or in fact depends upon its location and surroundings, the manner of its conduct, or other circumstances. In such cases, proof of the act and its consequences is necessary. The act or thing complained of must be shown by evidence to be a nuisance under the law, and whether it is or is not a nuisance is generally a question of fact." In *Lonoke* v. *Chicago, R. I. & P. Ry. Co.,* 92 Ark. 546, 123 S. W. 395, this court said: "The act done or the structure erected may be a nuisance *per se,* or the act or use of the property may become a nuisance by reason of the circumstances or location or surroundings. In the one case the thing becomes a nuisance as a matter of law; in the other it must be proved by evidence to be such under the law."

This distinction has been recognized in many of our cases, and nuisances in fact have been absolutely abated in some of these cases, while in others, permission has been granted to continue operation of the business or use sought to be enjoined under certain conditions and limitations prescribed by the court. See,

*Durfey* v. *Thalheimer,* 85 Ark. 544, 109 S. W. 519; *The Gus Blass Dry Goods Company, et al.* v. *Reinman and Wolfoot,* 102 Ark. 287, 143 S. W. 1087; *Ft. Smith* v. *Western Hide & Fur Company,* 153 Ark. 99, 239 S. W. 724; *Huddleston* v. *Burnett,* 172 Ark. 216, 287 S. W. 1013; *Bickley* v. *Morgan Utilities Company, Inc.,* 173 Ark. 1038, 294 S. W. 38; *Jones* v. *Kelley Trust Co.,* 179 Ark. 857, 18 S. W. 2d 356.

In *Durfey* v. *Thalheimer, supra,* it was held that a livery stable was not a nuisance *per se,* but that it might become so by the manner in which it is constructed or conducted. Mr. Justice BATTLE, speaking for the court in that case, said: "It is the duty of every one to so use his property as not to injure that of another; and it matters not how well constructed or conducted a livery stable may be, it is nevertheless a nuisance if it is so built or used as to destroy the comfort of persons owning and occupying adjoining premises, creating an annoyance which renders life uncomfortable; and it may be abated as a nuisance."

In the Bickley case, *supra,* defendants were enjoined from erecting and operating an ice plant in a residential section of the City of Texarkana, and the court quoted with approval from the case of *Yates* v. *Mo. Pac. Rd. Co.,* 168 Ark. 170, 269 S. W. 353, 38 A. L. R. 1434, as follows: "The maxim, 'use your own property so as not to injure another,' is peculiarly applicable in nuisance cases. If one does an act, in itself lawful, which yet, being done in that place, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act, where it will be less offensive. . . . That is a nuisance which annoys and disturbs one in possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and, when the causes of annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance." In *Jones* v. *Kelley Trust Co., supra,* the court said: "The chancery

court had authority to issue a permanent injunction, but he also had authority to permit the operation under the conditions named."

In a discussion of the form and scope of injunctions to be issued in nuisance cases in 39 Am. Jur., Nuisances, § 172, pages 443-4, it is said: "Where the injury complained of results from acts that are not a nuisance *per se,* but only such by reason of the manner in which they are done or the surrounding circumstances, the court will not grant an injunction in such form as absolutely to prohibit the defendant's use of his property, if it is possible to frame a decree which in another form will give the plaintiff the relief to which he is entitled." And, in § 171 of the same work and volume, the text-writer says: " . . . . a decree enjoining a nuisance should specifically point out the things which the defendant is required to do and to refrain from doing in order to abate the nuisance which is found to exist. It should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it, and, when practicable, it should plainly indicate to the defendant all the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ."

The decree in the instant case was rendered in conformity with the rules just announced. It did not restrict the use of the barn by appellants as a storage for their feed crops, nor did it absolutely prohibit them from keeping cattle upon their lands. The chancellor found from the evidence that keeping as many as 10 cattle at one time within the inclosure—which was equivalent to its use as a pasture only—did not constitute a nuisance, while the maintenance of a larger number of cattle upon the lands did constitute an intolerable nuisance to appellees. This disputed question of fact was determined by the trial court after hearing all the evidence. Appellants have not favored us with an abstract of the testimony of the several witnesses who testified in behalf of appellees on this issue. We are not required to explore

the record to ascertain whether this evidence was sufficient to support the decree rendered by the trial court, and will presume its sufficiency for that purpose. *Velvin v. Kent,* 198 Ark. 267, 128 S. W. 2d 686; *Norden v. De-Vore,* 207 Ark. 1105, 184 S. W. 2d 585; West's Arkansas Digest, vol. 2, Appeal & Error, § 592, and cases there cited.

The decree is accordingly affirmed.